IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**LOCAL 211, UNITED AUTOMOBILE,**
**AEROSPACE, AND AGRICULTURAL**
**IMPLEMENT WORKERS OF AMERICA**
**(UAW), ET AL.,**                              Case No. 3:16 CV 3077

      Plaintiffs,

      v.                                      Magistrate Judge James R. Knepp, II

**JOHNS MANVILLE CORP.,**

      Defendant.                               MEMORANDUM OPINION AND ORDER

### INTRODUCTION

On December 27, 2016, Plaintiff Local 211, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW Local 211"), and Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW International"), collectively "Plaintiffs", filed a Complaint against Defendant Johns Manville Corporation ("Defendant"). (Doc. 1). Plaintiffs bring claims under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking enforcement of a collective bargaining agreement. (Doc. 1). Because the Complaint raises federal questions, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. On February 17, 2017, the parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 9). The case is before the Court on Defendant's Motion to Dismiss (Doc. 7), which Plaintiffs opposed (Doc. 11), and Defendant replied (Doc. 12).

The Court held oral argument on June 30, 2017, to discuss potential jurisdictional issues. (Non-document entry dated June 30, 2017). Following oral argument, the Court permitted the

parties to file supplemental briefs, which they did on July 14, 2017. (Docs. 15, 16). For the reasons discussed below, Defendant's motion (Doc. 7) is hereby DENIED.

## BACKGROUND

Accepting the allegations in the complaint as true, and viewing the complaint in a light most favorable to Plaintiffs, the facts are as follows. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

UAW Local 211 entered into Collective Bargaining Agreement ("CBA") with Defendant, effective from October 1, 2010, to October 1, 2014. (Doc. 1-1, at 4). During this period, Plaintiff UAW Local 211 filed a grievance challenging the termination of an employee, Craig Brickel[1], for using a racial slur. (Doc. 1, at 3). The grievance was submitted to arbitration, and Arbitrator Anna DuVal Smith held a hearing on December 3, 2013. *Id.* The parties submitted post-hearing briefs on January 15, 2014. *Id.* To date, for reasons unknown or unstated, the Arbitrator has not issued an opinion, despite multiple requests for her to do so. *Id.* Over two years later, on June 3, 2016, Plaintiffs' Union Representative, Chad Cattell, notified Defendant's representative, Ms. Stephanie Padilla, it intended to re-arbitrate the case. (Doc. 1, at 4; Doc. 1-2, at 1). In the email, Mr. Cattell stated:

> The contact information you requested regarding the Craig Brickel case is Susan Pfieff from [American Arbitration Association "AAA"]. The phone number for Susan is [ ]. I would like to take this opportunity to communicate to you it is the Union's intention to re-arbitrate this case. I look forward to your response to this matter by 6/10/2016 per our phone conversation on 5/31/2016.

(Doc. 1-2, at 1).

The same day, Ms. Padilla responded in an email:

> I thought you were going to send me documentation or information regarding what the union has learned about the arbitrator and the matter. I am confused as to why

---
1. The employee's surname is spelled both "Brickel" and "Brickell" throughout the record.

>you have provided a phone number for someone with AAA. At this time, the Company is not interested in arbitrating the matter. If the union wished to pursue resolution they should have addressed the matter years ago. The lack of action on the Union's part amounts to a waiver, and laches, and the Company has relied on the union's lack of action as acquiescence to the termination. There is nothing in the contract that would permit the Union to re-arbitrate a termination that occurred years ago. Nevertheless, without waiving these and other arguments and defenses, the Company would be willing to offer Mr. Brickell $2500 in exchange for a full waiver and release of any and all claims against the Company or the Union. I will await your response once you have had an opportunity to discuss the matter with Mr. Brickell.

(Doc. 1-2, at 3).

Three days later, on June 6, 2016, Mr. Cattell responded via email:

>I was sending you the contact information of the person from AAA that we were in contact with. I was under the impression you would like the same information we received. There has been no lack of action on the Union's part to receive a ruling on this case. The lack of a ruling does not amount to a waiver. Regarding the Contract yes there is, the grievance procedure has not been fully utilized therefore the grievance is still open. The Union's position is to follow through with the grievance procedure agreed to in the contract to resolve this issue.

(Doc. 1-2, at 4).

Having not received a response, Mr. Cattell emailed Ms. Padilla again on June 15, 2016:

>Stephanie, Good Morning, I have not heard back from you and I wanted to see if you had any updates on moving forward with the Craig Brickell case. Given the circumstances of this case I feel the timing is of the up most [sic] importance.

(Doc. 1-2, at 6).

Mr. Cattell emailed Ms. Padilla again on June 30, 2016:

>I have not received any response from you regarding my last 2 emails June 6, 2016 and June 15, 2016. As I stated in the June 6, 2016 email the Union demands to finish through with the Grievance Procedure in the Contract. The last proposal from the Company of a 2500 settlement is not acceptable, it would be acceptable to request a new arbitrator and turn over the official transcripts to receive a ruling on this case. I will be waiting on a response.

(Doc. 1-2, at 9).

Ms. Padilla responded the same day:

3

> I have already provided you with the Company's position. As I stated previously, the Company is not interested in arbitrating the matter. If the union wished to pursue resolution they should have addressed the matter years ago. The lack of action on the Union's part amounts to a waiver, and laches, and the Company has relied on the union's lack of action as acquiescence to the termination. There is nothing in the contract that would permit the Union to re-arbitrate a termination that occurred years ago. Nevertheless, without waiving these and other arguments and defenses, the Company is still willing to continue negotiations for a settlement with Mr. Brickell that would include his agreement to a full waiver and release of any and all claims against the Company.

*Id.*

On July 15, 2016, Mr. Cattell sent the following email to Ms. Padilla:

> The Union is willing to complete the grievance procedure agreed to in the contract. You stated the company is willing to continue negotiations for a settlement. I have tried to contact you by email on 7/12/16 with a request to contact me by phone [ ]. I have tried to contact you by phone on 7/15/16. It is the Unions [sic] position resolve this grievance, you can contact me at the number above. The Union is willing to use any and all measures necessary to resolve this grievance.

(Doc. 1-2, at 8-9).

The parties continued to exchange email correspondence to attempt to schedule a telephone call between the two representatives. (Doc. 1-2, at 7-8). Finally, on September 28, 2016, Mr. Cattell notified Ms. Padilla in a letter that Mr. Brickel rejected the settlement offer, and that it intended to submit the transcript from the hearing to a second arbitrator for resolution. (Doc. 1-3, at 1). Having not received a response, Plaintiffs filed a complaint in this Court on December 27, 2016. (Doc. 1).

## STANDARD OF REVIEW

When deciding a motion to dismiss under Civil Rule 12(b)(6), courts test a complaint's legal sufficiency. The court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon*, 467 U.S. at 73; *Westlake*, 537 F.2d at 858.

4

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). And "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). This standard for Rule 12(b)(6) applies to "all civil actions." *Hensley*, 579 F.3d at n.4 (internal quotation omitted).

## DISCUSSION

### *Procedural Posture*

At the outset (and as mentioned during oral argument), the Court recognizes the unique procedural posture of this case. Although the parties did indeed submit the case to arbitration, an award or opinion was never issued by the arbitrator—an uncommon occurrence. In this sense, it is not clear if, and when, the arbitration concluded, and parties were unable to direct the Court to such a date of conclusion. Importantly, public policy favors resolution of labor disputes through arbitration. *See United Steelworkers v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960). "[W]hen two parties in a [CBA] have agreed to submit their disputes to arbitration, there is implicit in that method of resolution a duty on the part of the arbitrator to issue an award and bring the arbitration proceedings to a conclusion." *Graphic Arts Int'l Union*, 1979 U.S. Dist. LEXIS 10022, at *4. While federal court review of

5

arbitration awards is extremely limited, *see Tennessee Valley Auth. v. Tennessee Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam), here there is no arbitrator award to review. Furthermore, while the Court does have jurisdiction to compel arbitration, *see* 9 U.S.C. § 4, which appears may be the appropriate remedy in this case, it realizes the decision to do so may be premature at this point in the proceedings. *See Graphic Arts Int'l Union, Local 508, etc. v. Standard Register Co.*, 1979 U.S. Dist. LEXIS 10023, at *1 (setting aside the previously issued Order and Judgment, *Graphic Arts Inter'l Union*, 1979 U.S. Dist. LEXIS 10022, requiring parties to re-arbitrate because only motions to dismiss were before the court; therefore, that decision was "beyond the matters presented to the Court."). Before the Court is a challenge only to the sufficiency of the complaint through a Rule 12(b)(6) motion to dismiss, and parties do not dispute the applicability of the six-month statute of limitations. Following this ruling, parties may petition the Court "for an order directing that such arbitration proceed in the manner provided for in [the CBA]" pursuant to 9 U.S.C. § 4. *See also Pietro Scalzitti Co. v. Inter'l Union of Operating Eng'rs, Local No. 150*, 351 F.2d 576, 579 (7th Cir. 1965) ("Close scrutiny of the arbitration clause in the contract is required. If the issues can be fairly said to come within the coverage of the arbitration clause, a motion to stay proceedings pending arbitration or an order directing arbitration, as the case requires, must necessarily follow."). Here, the CBA states the parties will be bound to the arbitrator's award issued after arbitration. *See* Doc. 1-1, at 7-8, CBA, Step 4, Section 3 ("The decision or award of the arbitrator, in writing, on the merits of any grievance within his jurisdiction and authority, shall be final and binding upon all the parties to this Agreement.")

Therefore, at this point in time, the Court limits its analysis only to whether the company took an "unequivocal position", *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 1987), that it would not re-arbitrate the grievance.

*Motion to Dismiss*

On December 27, 2016, Plaintiffs filed a Complaint for enforcement of a collective bargaining agreement and to compel arbitration of a dispute arising under such. (Doc. 1). Defendant argues the claim should be dismissed as time-barred. (Doc. 7). Plaintiffs contend the claim is timely and, thus, the motion should be denied. (Doc. 11).

Pursuant to the National Labor Relations Act ("NLRA"), the six-month statute of limitations begins to run "when the employer takes an unequivocal position that it will not arbitrate." *Cummins, Inc.*, 434 F.3d at 483. In the Sixth Circuit, "the six-month period found in section 10(b) of the [NLRA] is the most appropriate statute of limitations to be applied in a union suit against a company to compel arbitration . . .". *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1237 (6th Cir. 1987). Further, "[a] union's cause of action to compel arbitration arises when the employer takes an unequivocal position that it will not arbitrate." *Id.* (citing *Fed'n of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp.*, 736 F.2d 896, 902 (3d Cir. 1984)).

Here, the parties do not dispute the applicability of the six-month limitations period. The issue is when the statute began to run and whether the complaint was filed within the six-month period. Thus, the Court must determine whether and when Defendant took an "unequivocal position that it [would] not arbitrate." *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Defendant argues Plaintiffs' claim is barred by the statute of limitations because the complaint was not filed within six months of its unequivocal refusal to re-arbitrate the grievance in the June 3, 2016 email. (Doc. 7, at 4-5). Plaintiffs respond its December 27, 2016 complaint is indeed timely because the earliest the statue could have begun to run is September 29, 2016, the day after Plaintiff's rejection of Defendant's last settlement offer. (Doc. 11, at 8). Plaintiffs further

assert that even if the statute began to run earlier—following the June 30, 2016 email—the complaint was timely filed within six months thereafter. *Id.* at n.2.

On June 3, 2016, Plaintiffs' Union Representative Mr. Cattell emailed Defendant's representative, Ms. Padilla. (Doc. 1-2, at 1). Mr. Cattell provided Ms. Padilla with the contact information for the AAA and notified it was "the Union's intention to re-arbitrate" this case. (Doc. 1-2, at 1). The same day Ms. Padilla responded with the following email:

> I thought you were going to send me documentation or information regarding what the union has learned about the arbitrator and the matter. I am confused as to why you have provided a phone number for someone with AAA. At this time, the Company is not interested in arbitrating the matter. If the union wished to pursue resolution they should have addressed the matter years ago. The lack of action on the Union's part amounts to a waiver, and laches, and the Company has relied on the union's lack of action as acquiescence to the termination. There is nothing in the contract that would permit the Union to re-arbitrate a termination that occurred years ago. Nevertheless, without waiving these and other arguments and defenses, the Company would be willing to offer Mr. Brickell $2500 in exchange for a full waiver and release of any and all claims against the Company or the Union. I will await your response once you have had an opportunity to discuss the matter with Mr. Brickell.

(Doc. 1-2, at 3).

Defendant argues this email is unequivocal evidence of its refusal to re-arbitrate. (Doc. 7, at 4-5). Plaintiffs respond that the email is equivocal because: (1) use of the term "at this time" implies there may a time in the future when Defendant would be interested in arbitrating the matter; and (2) the settlement offer within the email shows Defendant sought continued negotiations for resolution of the matter and had not "made up its mind." (Doc. 11, at 7).

Plaintiffs cite to two Sixth Circuit cases for support.[2] First, Plaintiffs cite to *Warehouse, Production, Maintenance & Miscellaneous Employees, Furniture, Piano & Express Drivers &*

---

2. Plaintiffs also cite the non-binding cases of *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545 (11th Cir. 1993), *Steelworkers Local 8506 v. Cont'l Tire*, 581 F.3d 158 (4th Cir. 2009), *In re IBEW Sys. Council U7 v. New York State Elec. & Gas*

8

*Helpers Local Union No. 661 v. Zenith Logistics, Inc.*, 550 F.3d 589, 592 (6th Cir. 2008), to support the proposition that finding an unequivocal refusal to arbitrate is a high bar. (Doc. 11, at 5). In *Zenith*, the union had a contract with Zenith, who provided services to Kroger. 555 F.3d at 590. At some point, Zenith outsourced certain work and the union filed grievances with Zenith and Kroger in response. *Id.* at 590-91. On February 3, 2006, Kroger responded that the grievances were sent to the wrong party since it did not have a collective bargaining agreement with the union and should rather be directed to Zenith. *Id.* at 591. Nevertheless, the union requested Kroger become involved. *Id.* On March 2, 2006, Kroger responded that it would not interfere in Zenith's labor relations. *Id.*

> However, on April 15, 2006, the Union gave notice to Kroger that:
>
> [t]he Union intends to proceed with theses grievances, including with regard to the joint employer issue, with or without Kroger's participation. It is the Union's position that Kroger is a party to these grievances and that it is bound by the outcome even if it chooses not to participate.
>
> On April 24, 2006, Kroger responded:
>
> Please be advised that I have already responded . . . regarding Kroger's position of [sic] your grievances with Zenith Logistics. I am inclosing [sic] copies of both letters for you to review. Kroger's position has not changed[.]

*Zenith*, 550 F.3d at 591.

The court determined the February and March communications were "at most only mildly equivocal . . . because they dealt with the grievance process generally, rather than arbitration specifically." *Id.* at 592. However, they were "one relevant circumstance in determining what the Union should have understood Kroger's later correspondence to have meant." *Id.* With regard to the April 15 letter, the court stated "[t]he only grievance procedure that could 'bind' Kroger is

---

*Corp.*, 180 F.3d 368 (2d Cir. 1999), and *Steelworkers Local 200 v. Wise Alloys LLC*, 2012 WL 2357738 (N.D. Ala.), which the undersigned finds unnecessary to address.

arbitration." *Id.* Thus, the court concluded that "by any reasonable measure, the Union should have understood Kroger's April 24 response to be an unequivocal refusal to arbitrate." *Id.* at 593.

Plaintiffs next rely upon *International Union v. Cummins*, 434 F.3d 478 (6th Cir. 2006), for support. In *Cummins*, the union filed a grievance in December 2001. *Id.* at 480. Thereafter, in June 2003, the parties selected an arbitrator, but later that month a company representative stated to the union that he assumed the union had dropped the matter and added the grievance was not arbitrable. Over the next several months the parties exchanged e-mails regarding arbitration. *Id.* at 481-82. The court ultimately determined:

> Although Cummins did state in June of 2003 that the grievance was not arbitrable, its subsequent conduct, discussed above, suggested that it was still open to negotiating with the Union. Because the March 4, 2004 letter was the only one that stated the grievance was not arbitrable without requesting further information from the Union, we believe that this is the date when Cummins's refusal to arbitrate became unequivocal.

*Id.* at 485.

In response to Plaintiffs' first argument, Defendant states that use of the term "at this time" followed by the statement that if Plaintiffs wished to resolve the issue, they should have done so years prior, means Defendant was no longer interested in re-arbitrating due to Plaintiffs inaction for two and half years after the grievance was first arbitrated. (Doc. 12, at 3). Further, Defendant alleges that its refusal to arbitrate in this case "was far more direct than the refusal in *Zenith*." *Id.* at 5. Defendant also states *Cummins* does not support Plaintiffs' position because in that case the union asked the company if it was refusing to arbitrate and in its response, the company did not say it would not arbitrate. (Doc. 12, at 3). While the Court finds Defendant's explanation of use of the term "at this time" reasonable, it is not persuaded by Defendant's arguments regarding *Zenith* and *Cummins*. In *Zenith*, the court noted that: "the unequivocal refusal standard does not turn on whether the party resisting arbitration has . . . uttered the magic words 'we refuse to arbitrate this

dispute'". 550 F.3d at 592-93 (quoting *In re Diamond D Constr. Corp. v. Int'l Union of Operating Eng'rs*, 15 F. Supp.2d 274, 289 (W.D. N.Y. 1998). Here, the totality of the circumstances indicates there was not an unequivocal refusal to arbitrate, even though Defendant specifically used that phrase. Further, in *Cummins*, in addition to what Defendant points out, the court also noted: "Although Cummins did state that the grievance was not arbitrable, its refusal was peppered with other comments indicating that it was willing to negotiate." 434 F.3d at 484. Similarly, here the emails indicate a willingness to negotiate.

In response to Plaintiffs' second argument, Defendant states the settlement offer "did not make equivocal its clear refusal to re-arbitrate the grievance" because "[t]he settlement offer was broader than the grievance and would have required the former employee to sign a release of all claims, not simply claims based on the [collective bargaining agreement]." (Doc. 7, at 4). The Court does not find this argument persuasive. As Plaintiffs point out (Doc. 11, at 8), Defendant points to no other potential claims except the one based on the collective bargaining agreement. Further, Plaintiffs allege Defendant continued to negotiate even after the June 30 email. (Doc. 11, at 8). The evidence of additional emails between the parties and an attempt to schedule a call between the parties to discuss the case (Doc. 1-2, at 7-9), certainly indicates continued negotiations. Importantly, "[t]he applicable standard requires that the refusal be unequivocal, which implies that any negotiation must occur *before* the company refuses to arbitrate and the statute of limitations begins to run." *Cummins*, 434 F.3d at 484 (emphasis in original). Further, "the unequivocal refusal to arbitrate required by the caselaw suggests that the employer must essentially determine that negotiation or persuasion is not feasible before the statute of limitations will begin to run." *Id.* Because the Court finds both parties' interpretations of the term "at this

11

time" reasonable, and because Defendant appears to have continued negotiations after June 30, the June 30 email is not an unequivocal refusal to arbitrate.

Because the Court finds the June 3 email equivocal, the next issue is if and when the statute did in fact begin to run. The June 30 email also contains a settlement offer and, thus, may reasonably be construed as continued negotiations. Therefore, the Court agrees with Plaintiffs that in this case, the earliest the statue could have begun to run is September 29, 2016, the day after Plaintiffs' rejection of Defendants last settlement offer. (Doc. 11, at 8; Doc. 1-3). Thus, Plaintiffs' December 27, 2016 complaint is timely because it was filed well within the six-month statute of limitations in 29 U.S.C. § 160(b).

## CONCLUSION

After a review of the record, and for the forgoing reasons, Defendant's Motion to Dismiss (Doc. 7) is hereby DENIED.

IT IS SO ORDERED.

s/James R. Knepp II<br>
United States Magistrate Judge